All right, Mr. Knight, you're on. May it please the Court, Nolan Knight here on behalf of the appellant, Trinity Marine Products, Incorporated. Members of the panel, there simply should be, an appellant respectfully submits, there is a rational middle ground by which the timeliness of a Federal Tort Claims Act plaintiff's cause of action should be evaluated. That rational middle ground is particularly of consequence in cases such as this, where extraordinary circumstances have given rise to the cause of action. Or to borrow from the phrase used by the lower court, bizarre circumstances have given rise to the cause of action. That middle ground is reflected respectfully in this Court's accrual of jurisprudence. That rational middle ground respectfully is reflected in equitable principles recognized by this Court. But whereas appellant's positions and arguments have been focused on those principles, the United States has attempted to frame this case such that it necessarily falls at one of two extremes. Not reconcilable with this Court's jurisprudence, not reconcilable with the record. On one extreme, the United States has taken a position that would obligate FDCA plaintiffs to file purely prophylactic causes of action, without any reasonable basis in fact, calling into question seriously Rule 11 concerns. Because no known facts, no facts that could be known, no capacity to penetrate through layers of deceit by representatives of the government, would save the FDCA plaintiff from a later claim that because, in theory, there could have been some circumstances, however remote or abstract, notwithstanding that the plaintiff did not know of those things, could not know of those things, that they nonetheless would be penalized at some later point in time. That kind of prophylactic approach to litigation is antithetical to judicial economy, is antithetical to efficiency, and is now in a post-Twombly-Iqbal era, not reconcilable with the things that a plaintiff is obligated to plead to establish a plausible factual basis for his claim, without any basis as an initial matter to understand those bases. At the other end of the extreme, and this is candidly how the United States has attempted to frame Trinity's position, which is simply not accurate, that one would have to know with an almost prophetic degree of certainty, each and every fact, the nature of the wrong, that those factual considerations would satisfy the elements of a cause of action to the point of, at the outset, exceeding some evidentiary burden of proof. That's not at all what the Trinity plaintiff's appellate has contended. Instead, making again reference to this rational middle ground, we have looked to this court's particularly insightful jurisprudence, regarding accrual principally, and in the alternative, equitable principles, to see how has this court defined what it means for a cause of action to accrue, and under what circumstances. I think Harrison v. United States by far is most instructive in this regard. At the most basic level, because there, as on any number of other occasions, the court articulated, and this is not controversial in this matter, that accrual is measured by knowledge of the injury and knowledge of causation. And when do you suggest that your client was put on notice of that? What date and what event? July 2011 was the first occasion by which we had the means to pierce through or to appreciate that there had been the type of intentional conduct by a law enforcement or investigative officer of the United States that could provide us a good faith basis for investigating and then proceeding with an administrative claim under the Federal Tort Claims Act. And what was that event that gave you that information? Agent Keith Phillips, the law enforcement investigative agent who is responsible for the bulk of the deceit, was indicted in July 2011, and a newspaper article picked up the indictment and published it. An employee of Trinity named Dennis Lencioni, who had been involved in the underlying criminal proceedings, that, as I'm sure the court recalls, was from 1999 to 2003, was familiar with Agent Phillips and the fact that Trinity defended against the criminal charges fairly aggressively and did not agree with the government's position. So when Mr. Lencioni sees this press release reflecting the indictment, which I might add was not internally discovered by the United States until approximately May of 2011, but when Mr. Lencioni sees the indictment, he then realizes there may in fact have been a factual set of circumstances for Keith Phillips as an investigative officer to have motivated, encouraged his prosecution for illegitimate purposes, serving his own interests in a way that corresponds with both the Louisiana substantive criteria for Melissa's prosecution claim and the requirement under the FTCA that the only set of circumstances in which the government's sovereign immunity and liability for Melissa's prosecution arises if it is in fact the narrow class of individual who fits the category of a law enforcement or investigative officer. Now the other person involved in the file suit way before you did, did they have sufficient facts to bring a case and you did not? What's the difference? Respectfully they did not, Your Honor, and it ties back into the way that this court in Harrison v. United States has articulated what is knowledge. It did so anticipating, I would respectfully submit, this type of dynamic by distinguishing between belief on one hand versus knowledge on the other. And only knowledge will be sufficient for accrual purposes, and on this record it is clear that codefendant Bedrine did not have the requisite knowledge because the elements of both belief and knowledge is that a thing objectively may be true, but that's not the measure of whether or not accrual starts. The second consideration for both belief and knowledge is that a person believes those things to be true, but the critical distinction between knowledge and belief, therefore accrual, is that for there to be actionable knowledge within the meaning of accrual, there has to be a reasonable basis for the factual belief. Mr. Bedrine, when he pursued his administrative claim, was quite candidly open that he had no reasonable basis for his belief that he had been amnesty prosecuted. And again, making reference to Harrison and the fact that belief would correspond, again, inadequate for accrual purposes, with a conclusion based upon suspicion, speculation, conjecture, dreams, ESP, etc. Mr. Bedrine's position when he initiated his claims was essentially, you know what, on gut instinct. It's simply not fair that a person who believed themselves to be innocent was prosecuted for four years by the United States. I think I should be able to do something about it. And he had no, in going forward with his case, he had no information with regard to the agent's misbehavior or agent's misbehavior? He did not. And are you saying that's the key fact that led you not to join his lawsuit? It is, Your Honor. And again, it ties into the FDCA criteria that you have to have that knowledge regarding, I'm sorry, that it has to be actions of the investigative law enforcement officer and it has to be intentional misconduct with a malicious motive. And on that point, Mr. Bedrine, he betrayed that he had no such information in that regard because he went to the presiding judge in the underlying criminal matter, Judge Melanson, and essentially said, Your Honor, if I'm going to have a fighting chance to establish some reasonable factual basis for what was otherwise a conjecture, speculative belief that this just isn't right, I need for you, Judge Melanson, to unseal the grand jury transcripts. Now, usually members of the panel, I suspect that an advocate in my situation, trying to establish what was reasonable at one point in time, is in a particularly unenviable position of engaging in a thought experiment. Assume with me, if you will, that you were in my shoes at this time with the facts that were known or the facts that were knowable. Can we diagnose that understanding as being sufficiently reasonable? Well, I don't have to do that, fortunately, on this record. Because an Article III judge, no finer or more compelling an arbiter of what was reasonable to perceive of the facts available when Mr. Bedrine prematurely initiated his minister's prosecution claim, twice denied Mr. Bedrine's request to unseal the transcript. On the second occasion, he says on the record, and I'm paraphrasing, but this is pretty close, I have no recollection whatsoever of the United States doing anything wrong and following this case to where it led. I respectfully submit that that in and of itself should be dispositive of what was reasonable to perceive of the facts at that point. Let me ask you this, and you may have answered this in a different way. I thought I heard you say the indictment of Agent Phillips, in effect, was the triggering knowledge date, right? That's correct, Your Honor. July of 2011. Okay. The government dismissed the indictment against Bedrine in September of 2003. Judge Malonzo granted the motion in September of 2003. It's four years after that indictment that Bedrine filed his lawsuit in July of 2007. Like I said, you may have answered this, but I'm trying to figure out. I follow you in terms of all the way up, but once the indictment was dismissed, that was three, it was four years between the dismissal of that indictment before even Bedrine filed his lawsuit. I guess in a shorthand way, coming back to what Judge Prado . . . I'm not sure I quite understand what the missing pieces or knowledge or basis of diligence that wasn't there. It just strikes me that somebody was monitoring the Bedrine suit or monitoring these situations because it's Judge Malonzo you just mentioned who was the one who dismissed. Just help me understand better. I hear you about belief, speculation, and like that. When we get into this arena in 2003 where there's actually the dismissal of the Bedrine indictment and all that went with it, why did not that move the knowledge base from belief, speculation, et cetera, to at least something more concrete from which Trinity might have been affected? I would respectfully submit that not even Bedrine in pursuing and then filing his lawsuit was purporting to articulate a reasonable factual basis for him doing so. When you read his complaint, for instance, in 2007, it is qualified to the hilt with statements such as on information and belief. It may be the case. I mentioned Twombly earlier, and I would also respect . . . This was a pre-Twombly filing by Mr. Bedrine. Had he filed that complaint in the clarified Twombly-Iqbal era, his claim should have been dismissed because what he in essence did in reading the allegations, he read the FTCA, he saw the FTCA's law enforcement proviso, he looked at the Louisiana Substantive Law, he saw that Louisiana Substantive Law says there has to be intentional misconduct with the willful impression, and he just parroted those criteria. Legal conclusions masquerading as fact. So it's not that he actually had some reasonable basis for his belief. He fall squarely into the Harrison dynamic in which he's acting upon intuition, suspicion, impulse. One of the things that I mentioned about Judge Melanson, he actually reviewed the transcript specifically towards the ends of attempting to discern not only whether or not a confidential informant had made misrepresentations to bring about the indictment, but to determine if a representative of the United States had done so, which would get you closer, and only that would get you closer to the FTCA criteria. But after Judge Melanson reviewed the transcript, his conclusion was, no, there's no compelling reason for Mr. Bedrine, who quite clearly was operating on intuition, suspicion, and conjecture, to think that he has a viable malicious prosecution cause of action. So I'm not unsealing them. What was the basis for, and I want to tell you your chart in your reply brief is very helpful, starting at page 17, but what was the basis that the grand jury transcripts were finally released on 19 December 2007 after Judge Melanson had denied release on a couple of occasions? Yes, sir. I'm glad you asked that question, Your Honor, because the United States went to Judge Melanson and said, give us the transcript because we think that that will conclusively allow us to defend against Mr. Bedrine's malicious prosecution claim. So the transcript was not even being viewed by the United States as something that might illuminate a reasonable factual basis for Mr. Bedrine's claim. It was being relied upon by the United States, and it was given to the United States by Judge Melanson because there's absolutely nothing in the transcript in and of itself that reveals the critical issue of intentional, willful oppression of the innocent based upon false statements of an investigative or law enforcement officer of the United States. Thank you. Thank you, Mr. Knight. You've reserved your rebuttal time. Mr. Fulcher? Ma'am, before you start docking his time, I want to ask a question of Mr. Fulcher. Mr. Fulcher, of course, we're happy you're here, but I notice you're with the United States Attorney for Mississippi, and this is an action filed in Louisiana. Is there some potential conflict by the U.S. Attorney in Louisiana, or are you just helping out? Your Honor, I was appointed as a Special Assistant United States Attorney in the Western District of Louisiana to handle this case from its inception. I'm not aware of what the potential conflicts were. I only know that they, I suspect out of abundance of caution at the very least, but that they did recuse on an office-wide basis. Because on your brief, the reference is to the U.S. Attorney for the Southern District of Mississippi, Mr. Davis, and then yourself. There's no reference to special appointment or anything. Your Honor, if that's the case, I apologize for that oversight. I believe we consistently have been putting Special Assistant United States Attorney. Okay. Thank you. And I apologize for that being the case. May it please the Court, of course, Dave Fulcher, United States Attorney's Office in Jackson, Mississippi, on behalf of the United States, simply stated, Trinity Marine has waited too late. And this is not a situation where, as in the Harrison case that's been cited about Trinity Marine, where the facts were completely unknown or unknowable. This was a situation where Trinity Marine's claims accrued just like Hubert Vadrin's claims accrued. And that accrual under the clear law of this circuit in the U.S. Supreme Court occurs when an injury occurs and when that injury's causation is known. And I would refer the Court to the report and recommendation page. In the record, it's 2832. It's page 23 of Judge Hanna's original report and recommendation. And there he says, Finally, this Court cannot fathom that Trinity Marine did not share Mr. Vadrin's suspicion that false testimony had been presented to the grand jury, since the information that allowed the Vadrins to timely assert their claim was equally available to Trinity Marine. And he goes on to say that this is especially true since a review of the briefs filed in the criminal matter and the transcripts of the hearings held in that matter reveals that Trinity Marine's counsel took the lead in both drafting submissions to the Court and in arguing before the Court. And as we argued before the magistrate and again before the district court, Hubert Vadrin was not presenting a meritless claim. And what Trinity Marine would invite this Court to do is to find that after over eight years and ten months of litigation by their code defendant in the underlying criminal case, that their claim finally accrued. As I understand it, malicious prosecution can't be brought against a prosecutor who brings a case and then it's dismissed. There has to be some causation on the part of the federal agents. So when the case is dismissed, what is out there that might have brought their attention to the fact that there was not just sloppy work on the part of the prosecutor, but in fact there was some misdeeds by the agents who brought that case to the prosecutor. In this case, Your Honor, and you are correct, malicious prosecution is a very narrow exception in the Federal Tort Claims Act and it can only be brought against agents. In this case, the Vadrin case was brought based upon the, in large part, the reliance of the agents and the government on an informant named Mike Franklin, who, as is set out in the initial complaint and in the subsequent complaint by Vadrin, was put forward in the criminal case as having obtained test results that showed that the substance and issue was in violation of the law and in fact those tests were never obtained. There were, no tests were ever done. And that was a significant basis for the government's dismissal. So the government dismissed the case before the case ever went to trial because this proffered informant or witness, Mike Franklin, was excluded and also because the test results were not available. They didn't exist. So that first case was brought because there was a bad witness, but any evidence of the two agents involved in the investigation making up the whole investigation for other reasons, that was not known to the criminal defendants. Is that correct? I believe it was known to the criminal defendants and was the basis for their dismissal. It was known that they were the agents who had put forward this evidence and who had pushed forward this case without having any test results whatsoever. I think there's even a reference in the complaint to them attempting to hypnotize the witness to find out where these test results were. So even though they had said there were test results out there, they didn't have them in hand. They didn't have a witness who could tell them where to find them. There are even, in the complaint, I believe there are allegations where the agents went to all sorts of different testing facilities to see if they even knew where these test results were. So it's very squarely on the shoulders of the agents who were putting this forward. I guess I see that, but isn't that when you have informants you just don't know how reliable they are and the prosecution puts up an informant who's going to be a shaky witness and then realizes maybe you can't rely on this informant and dismisses the case. That's one thing, but to say that the agents were intentionally making up the whole investigation, that's a more serious matter that might lead to litigation as opposed to an informant that's not reliable or a faulty witness. Yes, sir, and it's not just they have a bad witness or a witness that goes south. It's they never had a test result to back up the contentions in the indictment. In other words, there's no test result. Is that in the record where they have admitted they never had a test result? It is, Your Honor. And I guess importantly for the court's consideration here, it's in the complaint as initially filed timely by Hubert Vadreen. It's absolutely in the amended complaint filed in 2009 by Hubert Vadreen, which was two years after his complaint, and I'll back up for a second. The underlying criminal case was dismissed in 2003. Hubert Vadreen timely filed an administrative claim within two years in 2005. He filed a lawsuit in 2007. He survived a summary judgment motion. He then amended his complaint and at that point, among other things, referred over 60 times to the grand jury testimony provided by the agents, which was false, which was inaccurate. And in that amended complaint, he also discusses the test and the fact that there was no test, that it didn't happen. So from 2009, even if the court doesn't find that the claims of Trinity Marine accrued in 2003 or 2005 or 2007, certainly they accrued in 2009, and they did not file their administrative claim until 2012, which is more than two years after the 2009 amended complaint by Hubert Vadreen. So there are certainly, during the course of this eight years, ten months, there are several points at which the claim accrued for Trinity Marine, even if it didn't accrue at the beginning, even if you accept it. But the agent Phillips being indicted for perjury didn't occur until July 2011, and it was not until June 2011 that the trial judge in Vadreen's action started making rulings that the testimony by Phillips was suspect. Actually, that's true, Your Honor. I would submit, however, that that's not the triggering accrual event that caused the— Well, I know you take that position, but does Trinity have to say, well, they're saying they didn't have that test result. That could be, as Judge Prado has said, because they had an informant that lied to them. I think the informant had a drug habit, didn't he? Yes, sir. And that could be the reason, but we're not real sure that is a basis for malicious prosecution under the Federal Tort Claims Act. I mean, do they have to do that, or can they wait for something stronger? Your Honor— And that stronger was in 2011, June, when they find out about this extramarital affair between a EPA agent and a FBI agent, and they filed their administrative claim within about a year of that. Your Honor, under the accrual law under Piotrowski from this court, from Harrison, from United States v. Kubrick, which is a U.S. Supreme Court case, the claim—a plaintiff doesn't have to realize that they have a legal cause of action for their claims to accrue. So it's not that they have to have an actionable case. It's not that they have to have a winnable case. They have to know that they've been injured and that there's causation. Well, that's right. They have to at least have a good-faith belief that they have a claim. And is there anything in the record as to why they didn't have a good-faith belief that they didn't have a claim when it was determined about this no test? There is, Your Honor. Again, I would refer the Court back to the Vajreen litigation and to the amended complaint in 2009 and the original complaint in 2007. Whether Trini Marine was actually aware of the allegations in the complaint, Trini Marine had a duty to investigate, to be diligent. There was admission by counsel for Trini Marine during oral argument in the district court that he, in fact, had been told about Hubert Vajreen's litigation, had looked at it, and had made a decision not to pursue or had advised his client not to pursue litigation based on what he saw. But there's a difference between the question is not whether a person has made a decision not to pursue a case after weighing what they see. The question is, have they been injured? And in a malicious prosecution case, the prosecution itself is the injury. And then the causation element, which is, was it the result of something that was done in the course of that litigation by the government? And in this case, obviously, as with other malicious prosecution cases, that evidence is there. And Hubert Vajreen puts it forward at multiple points. The other thing I would also point the court to is in the Vajreen decision by Judge Doherty, she explains the operation of the presumptions of malice under Louisiana law.  But in analyzing the situation, there was not just an accrued cause of action. There was an actionable cause of action. So under Iqbal, Twomley, all those, this still would have stood up and did stand up because there's a presumption of malice where the criminal case is dismissed prior to trial. So in the light of all of that, assuming we agree that the claim accrued during the Vajreen litigation earlier than Trinity says it did, what is the basis for saying that then in the alternative there shouldn't be promised estoppel because of all of these, as counsel for Trinity says, extraordinary circumstances? Your Honor, this is not really, this is not a situation where estoppel applies. The argument that Dave advanced is that the government took the position that Vajreen did not have an actionable case in the underlying litigation. And in order for estoppel to apply, the underlying court has to accept that argument. No, sir. I'm not talking about judicial estoppel or collateral estoppel. I'm talking about equitable estoppel, which the Supreme Court recently in the Wong decision earlier this year says is applicable now that the statute of limitations is no longer jurisdictional. Yes, sir. And Wong also includes language that is consistent with what this court has held, and that says that it's an unusual situation where a party has pursued their rights diligently and where some extraordinary circumstance prevents them from meeting a deadline. So there was nothing that prevented them from meeting a deadline. The government did not prevent them from going forward with their case. The best example of that is that Hubert Vajreen did go forward with his case. Well, along that line, the government moved to have this case dismissed under Rule 12b-1 for lack of jurisdiction, claiming, as the law then was, but there were suspicions that this statute of limitations was jurisdictional. And this matter was referred to a magistrate judge, and he wrote a report and recommendation, which the district judge adopted. Did the district judge hold a separate hearing on this before adopting the report and recommendation? He did, Your Honor. And out of an abundance of caution or whatever, the magistrate judge opined on equitable estoppel and said there was no basis for it, even though at the time it was thought the limitations period was jurisdictional. Now, assuming we vacate this Rule 12b-1 ruling, this wasn't summary judgment, was it? No, sir. It's just a Rule 12b-1 motion to dismiss. Assuming we vacate this judgment and it obviously would be remanded to district court, is it your position that it would then be subject to summary judgment? Yes, sir. Either dismissal under 12b-6 or under summary judgment. And I would submit to the court, first of all, that that finding by the district court is subject to an abuse of discretion standard of review and that the court did not abuse it. What finding? The finding, the alternative finding that equitable tolling should not apply in this case. So this is a decision for a judge and not a jury? Yes, Your Honor. And ultimately this case would be a bench trial anyway under the FTCA if it were to go forward. All right. We would also submit that there is more than sufficient evidence within the record here for the court to make the findings consistent with what the court below did. I would also draw to the court's attention, there's a case . . . Wait. Was there discovery in this case, depositions, et cetera, that would inform the court about basis for equitable estoppel? No, sir. There was no discovery that was done. However, there were extensive matters that were placed before the court, and it's in the record that includes the opinion of a jury, the underlying complaints. The magistrate judge reviewed the record from the underlying criminal case and refers to those in his opinion. He has those laid out. So the underlying record is there. It's not simply a matter of going back and conducting discovery. There's more than sufficient factual basis in the record for that. Is there an affidavit by counsel for Trinity as to why an action hadn't been filed earlier? I don't believe there is. I don't recall specifically. Is it your position that if we remand, you could depose counsel for Trinity as to why an action wasn't filed earlier? It's certainly something we would consider. I'm not sure, again, that it really ultimately is a matter that's dispositive for this case because the important thing is that they knew of the injury. They knew that they had a potential cause of action and made a decision. Well, why would that be under Rule 11? Counsel can be sanctioned for filing an action that doesn't satisfy the rule. Isn't counsel allowed to file some sort of affidavit or something as to why he thought he had a good faith belief that this claim had merit sufficient to file a complaint? I guess as a starting point, there was never a Rule 11 motion filed. I'm not suggesting there was. I'm just looking at a parallel proceeding. Your Honor, I guess that gets over into the question of whether they made a reasonable decision or not to not go forward with the case. Again, I'm not sure that really impacts on the question of accrual, and I don't believe it impacts on the question of equitable tolling. He has made that representation in the court that he made that decision, and I believe has fully defended himself as to why he made that decision. But in the end, the question is whether the claims accrued and whether they were timely filed and whether there's equitable tolling. Would the government stipulate to his representation? Would you say, yes, we accept that statement by you that you didn't think it passed Rule 11 muster? I don't believe you would, nor should you. I'm not sure that you're right. I don't believe that that's appropriate at this stage. Well, that possibly is an area for discovery. Again, Your Honor, I'm not sure where the Rule 11 question comes in. I'm not quite following you on that. Well, frankly, I like to hear a lawyer that every now and then says, I didn't file this action and just willy-nilly file it in the court because I didn't think there was a basis for it. I think that's pretty commendable. We need more of it. Yes, Your Honor. The flip of that is they're essentially accusing Vadreen's attorney of having done so. Well, why do they have to rely on Vadreen's attorney? I know nothing about Vadreen or Vadreen's attorney. I don't know about the relationship between Vadreen and Trinity. Yes, sir. I would submit, however, that he timely filed his claims, timely filed his lawsuit, pursued it to a verdict, obtained $1.6 million, and only at that point did Trinity and Vadreen decide that they were going to get on with it. Primarily pursued it to a verdict based on this informant witness that couldn't produce his test results. That's correct, Your Honor. Not based on the FBI and EPA agents. As the magistrate judge pointed out in his report and recommendation, the fact of the affair is not what mattered in pursuing the case for Vadreen. In other words, that was not the triggering event for his claims to accrue and for him to have a valid cause of action. Why does that not all the more speak to the issue Trinity was raising? All the way down through here, the district court or the magistrate was chastising counsel for even suggesting that there might have been some misdeeds between these law enforcement officers. It's not until it gets down to the crux that all of a sudden, what somebody arguably was staring down a gun barrel of sanctions for even bringing this up, then suddenly we get this revelation. Guess what? It wasn't a fairy tale. You've got these two agents not just converting, but carrying on a full investigation as a sham for their respective spouses or whomever to be able to be out of town to carry on. I mean, it at least fits some sense of extraordinary that we don't ordinarily expect federal agents to be doing that. If Vadreen's case wasn't predicated on their misconduct, but on the other matters, I mean, isn't there some force, and given the narrow exception in the FTCA that you can only bring this against law enforcement officers, not the attorneys. I mean, why isn't it at the latest possible date when, as the old people say, there's a proof positive that there was some misdoings by the agents presented itself. I mean, why isn't that a reasonable trigger of accrual under these extraordinary circumstances? Not that he could have, should have done what Vadreen did, and he would have been that much better off, but, I mean, at least arguing to equitable stop or something. I mean, why is that so? I mean, given the government's lack of clean hands throughout this matter, I mean, why isn't that one more pebble on the scale of equitable stop? Not for every case coming down the pike from now until eternity, but, I mean, this is a little bit odd, isn't it? Your Honor, I . . . I know what color the light is. It's not going to turn any other shade but the one that it is, but, nonetheless, I'm asking you a question, which you may not be all that enamored to answer, but . . . I'm more than glad to answer it. I mean, even you being here, it's possessed. I mean, we got the U.S. Attorney's Office of Mississippi in here, or in a case that started up in southwest Louisiana. I mean, there's nothing about this case that's regular, right? Absolutely. You're correct. You've got a 12B1 that's urged and argued. The magistrate judge is considering the evidence. It's not in the record. Nobody moves to convert it to a Rule 56 summary judgment. It's a mishmash, isn't it? Yes, sir. This is absolutely not the typical case that I handle or that we see in our office or anywhere else. So why is the government so urgently pushing back? I understand not wanting to dole out another 1.7, but . . . I'm sorry. I'm not going to ask you to concede. No, that's . . . I'm just trying to get you . . . I mean, is it so unreasonable? But particularly what I'm bearing on is the question Judge Barstow asked you, though, just about the whole equitable . . . Stop, even assuming you're right on the accrual date, which is an assumption, but just on the equitable . . . Stop. I just hadn't seen any cases that . . . Well, we couldn't have because the Supreme Court just told us what they did, but just what's your best argument as to why there's not a well-founded basis for us to determine equitable stop just based on this sort of strange scenario? Your Honor, the case that Vadreen brought and the claims that Chernew Marine potentially had were actionable and as the underlying . . . as the lower court found, were valid claims and a valid case, even completely without any evidence of the affair, and the magistrate judge found that, and it's in the report and recommendation in the supplemental report. Was evidence of the affair come out at the trial? It did, Your Honor. It came out before that point, I believe, during a deposition of Agent Barnhill who told the truth. But as the magistrate judge found and as the district court adopted in this case, this was an actionable case. This was a valid case without the evidence of the affair. It had survived summary judgment twice. At some point, the statute of limitations considerations override, and I would suggest that this is an unusual case, not just in the fact that we have sexual misconduct between agents, but it's unusual in the sense that we have a claimant who has come in eight years, ten months after the fact, who knew about the underlying litigation, who was involved in getting the criminal case dismissed on the front end, who simply sat back and waited until this entire case went to a verdict. And I would point out also, diligence is one of the important components in equitable considerations. They, by their own admission, knew of the situation in July of 2011 and didn't file an administrative claim until almost a year later, almost exactly a year later. So had they come in right on the heels of finding this out, I think they would have an argument for diligence. But a year is quite a long time to wait as well. All right. Thank you, Mr. Fulcher. We do appreciate your candor and completeness in responding to all our questions. We expect nothing less of the government, as we do all counsel, but particularly the government, to be forthcoming. Yes, sir. Thank you, sir. Thank you. All right. We're back to you, Mr. Knight. He says you knew enough. You didn't have to know everything. I respectfully disagree. We do nothing that the law considers to be the minimal threshold to Judge Barksdale responsibly initiate a court proceeding. Are you subject on remand? Would you be subject to being deposed as to why you thought you didn't have a claim? I was not counsel of records, so I wouldn't have firsthand knowledge. But perhaps, Your Honor, we may even be receptive to that. One of the things that we did, anticipating precisely that issue in the district court, although my colleague, Rick Addison, was a counsel of record for Trinity during the criminal prosecution between 1999 and 2000, and he's a counsel of record in this matter, I was designated as lead trial counsel, anticipating that he may be a fact witness. So we are prepared for that. And to your point on that issue and the notion of whether or not this remand could be resolved by summary judgment, I want to reiterate. I'm not saying it can be resolved. I'm just saying it would be subject to a summary judgment motion. I agree. I didn't mean to overstate the case on that. But in that respect, if we have to resolve this in a summary or attempt to resolve it in a summary judgment context, we are ready to do that because we don't think that the factual record comes close to establishing no genuine issue of material fact regarding whether or not our knowledge was within the two years before we presented our claim. Assuming that knowledge of the affair was key to bringing a complaint, you didn't discover it until you read about it in the paper. Is there any evidence of any reasonable diligence of you trying to discover this matter, or did you just sit around and think you weren't going to bring a lawsuit until you read about the indictment in the paper? I mean, in order for there to be equitable tolling, there has to be reasonable diligence on the part of the party for it to apply. Was there reasonable diligence here on your part in trying to discover that fact? There absolutely was, Your Honor. For four years, between 1999 and 2003, as counsel for the United States acknowledged, Trinity took the lead on developing the shortcomings with both the factual underpinnings and the legal basis for the United States prosecution. The problem that I have with the way that the United States has argued the issue of diligence is they continue to suggest that the only measure of our diligence is what happened after the criminal prosecution was dismissed. If we could have unearthed, which was impossible because an agent of the United States was willing to perjure himself to conceal it, that this gentleman was engaged in an extramarital affair with his co-investigative agent to facilitate the prosecution and able to pursue the affair, we absolutely would have asserted that in the context of the criminal proceedings as grounds for why it should have been dismissed. But notwithstanding the considerable diligence that we exercise in that context, we simply can't penetrate against that because it's the nature of deceit. In fact, in Piotrowski v. United States, on all the equitable tolling principle, the measure is if the diligence actually would have enabled you to discover the fact. There's not a diligence in the abstract standard. And we here, too, don't have to engage in a thought experiment regarding what diligence supposedly would have borne out. Because when Mr. Verdrine is being chastised by a United States magistrate judge, for with no articulable basis whatsoever, even inquiring into the prospect of the affair, that did not uncover the affair or the fact that the affair almost certainly was the essential motive for the prosecution. Because Agent Phillips denied it under oath. Then contacted his case agent three times, encouraging her to deny it under oath. Hence the perjury and obstruction of justice charges which led to Agent Phillips' imprisonment. So diligence would not have made a difference here. When the diligence occurred, whether it was during the prosecution, whether it was after the prosecution, that's not the issue. The issue here is the fraudulent concealment of representatives of the United States regarding the issue dispositive to even have a reasonable factual basis to pursue a claim. The government says that there was enough there that Mr. Verdrine got a verdict just solely on the informants being improper and bad or the expert witness or whoever it was that did the testing, and that was sufficient to bring a cause of action and get a verdict, and you really didn't need this other information about the affair, and that the first Mr. Verdrine was able to get a verdict. Why isn't that correct? That's a lie. Judge Barksdale made reference to a timeline that I included in the briefing to try to deal with precisely that fact. That is simply not consistent with the way that things develop in this case. Mr. Verdrine, the perjury and obstruction of justice charge was revealed one month before Mr. Verdrine was set to go to trial. In Judge Doherty's trial ruling, the perjury, the obstruction of justice, the affair, the additional falsification of evidence by the additional concealment by Agent Phillips and EPA technical expert Guy Tidmore, none of those things were discovered until the trial in June 2011, and the precipitating event for Judge Doherty to recognize those things was the revelation of the affair. So Mr. Verdrine did not go to judgment just based upon his belief that a false informant precipitated the underlying criminal proceedings. Mr. Verdrine prevailed because by luck, after three years of successfully concealing and the perjury going unrevealed, it finally was revealed in approximately May of 2011. Thank you. Thank you. Mr. Knight, Mr. Fulcher, I appreciate your briefing and argument in the case. We'll decide it. Before we hear the argument in the third case, the panel will stand in a short recess.